### Application of ARCHER MESSENGER SERVICE, Inc.
Docket No. 72523-CCT.   Order No. 12364.
Florida Public Service Commission.
October 10, 1975.

Bernard C. Pestcoe, Miami, for the applicant.

Jon Moyle, West Palm Beach, for Rush-In Messenger Service, protestant.

Norman J. Bolinger, Jacksonville, for Harper Delivery Service, Inc., Ace Delivery Service, Inc., Florida Delivery Service, and Rush Trucking, Inc., protestants.

William C. Martin, III, Orlando, for Sentinel Star Express and Pony Express, protestants.

Ansley Watson, Jr., Tampa, for American Courier Corporation, protestant.

Herbert B. Wilensky, Miami, for Sands Delivery Service, Inc. and Allied Parcel Delivery, Inc., protestants.

Richard J. Brooks, Altamonte Springs, for Bio-Med-Hu, Inc., protestant.

The following commissioners participated in the disposition of this matter — WILLIAM T. MAYO, Chairman, WILLIAM H. BEVIS, PAULA F. HAWKINS.

BY THE COMMISSION.

Pursuant to notice the commission by its designated hearing examiner, Leon F. Olmstead, held public hearings on this matter in Miami on April, 3, 4, 5, 6, 19 and 20, 1973.

By Order No. 12091 issued on May 14, 1975, this commission denied the application of Archer Messenger Service, Inc. (hereinafter Archer). Upon further consideration and for the reasons set forth hereinbelow, the commission has determined that Order No. 12091 should be reconsidered.

Following the denial of the application, Archer filed an extensive petition for reconsideration which in essence argued that the protestants herein were unable to serve the needs demonstrated by its supporting shippers and receivers. Protestants, Harper Delivery Service, Inc., et al, and Purolator Courier Corporation filed replies to the petition for reconsideration. Both assert the correctness of Order No. 12091.

Archer has applied for authority to transport in common carriage, between points in Dade, Broward and Palm Beach counties, the following commodities —

1. Advertising material, proofs, cuts, mats, engravings, and related printed material and paper documents related thereto; press and news releases to the media;

2. Accounting data from or to stock brokerage houses, attorneys, accountants or real estate developers;

3. Samples of manufactured products moving to or from retail outlets;

4. Exposed or processed film and prints, and electronic tapes and records;

5. Whole human blood, pacemakers and machines to be inserted into human body, blood derivatives, laboratory samples, specimens, parts of human anatomy, tissue sample serum specimens, medications and documents and records related thereto and hospital supplies and material; restricted against temperature control vehicles or use of dry ice for temperature control;

6. Data tapes, keypunch cards, microfilm, business papers, records and documents; restricted against movements from and to banks, banking institutions and banking service institutions, including computer centers on the premises of banks, as well as computer centers serving banks or owned by a bank;

7. Print cuts, critical replacement parts and machines used in connection with data processing; and lighting supplies;

8. Blueprints, building plans designs, building models, engineering tracing prints, material or supplies, flowers, and floral arrangements.

All shippers shall enjoy exclusive use of the vehicle in which their merchandise travels. All deliveries shall be performed within four hours of pickup.

Under the authority requested herein the applicant proposes an on-call, expedited, messenger service operating 24 hours a day, seven days a week which will pick up items as requested, transport them directly to the destination with delivery within four hours of pickup and, if necessary, wait for the item and continue it to another destination or return to the point of origin. Each shipper will have exclusive use of the vehicle while making his delivery.

As each delivery is completed, the driver will check with the dispatcher, either by telephone or radio, for further instructions. If there is no dispatch waiting for him at that time, he will stand by at that location until needed. Drivers will return to the office only to turn in their receipts and reports when going off duty.

Under its present operations in the Miami area all vehicles are leased from the driver and are not distinctively marked. With the grant of authority herein all vehicles will be distinctively marked by paint color and will have the company name and other required information clearly displayed thereon, the latter possibly through the use of magnetic signs. Currently only 12 vehicles are two-way radio equipped, however, additional radios are on order and additional vehicles can be leased or purchased if required. The company owners have operated a similar service in the New York area for ten years and have been providing this service in Miami since February 1, 1972, when they purchased the applicant. As we found

in Order No. 12091, the applicant is qualified to render the proposed transportation.

Thirty-four public witnesses testified in support of the application.

Nine of these witnesses were found in Order No. 12091 to have been served illegally by Archer in that transportation for them was performed beyond the exempt zone of the city in which they were located. That finding is reaffirmed herein. Their need for additional service is based on continuation of the illegal transportation provided by the applicant, therefore, their testimony must be disregarded, Camp Lumber Company v. Yarborough, 262 So.2d 649. The transportation needs of another witness are limited to the Miami exempt zone and therefore within the applicant's present operations, and another only required emergency transportation of a 250 pound respirator between its place of business and various hospitals, which also is outside the scope of the application. The testimony of these two witnesses must also be disregarded.

The twenty-three remaining witnesses represented twenty different types of business including one law firm; a CPA firm; four advertising agencies; a trucking company; two hospitals; an interior decorator; an address list maintenance firm; a manufacturer's representative; a collection agency; an airline; a manufacturer of "pacemakers," artificial kidneys, catheters, etc.; a public relations and promotions firm; a stock broker; a printer; a funeral director; a real property management and sales firm; an industrial equipment sales and service agency; a paper distributor; a mobile home maintenance firm; and a mobile home owners' association. A few had no shipping requirements to Palm Beach County, but the majority ship various items within those counties enumerated in the application, on a short notice, expedited basis, requiring pickup and delivery in the minimum possible time. Individual shipments run up to 4,000 pounds (Tr 631) and for some witnesses must be moved 24 hours a day, seven days a week (Tr 254, 348. 634 and 906). Twenty of the witnesses require exclusive use of the vehicle or were not concerned therewith so long as nothing interfered with the direct movement of their shipment from point of pickup to destination. Most of the witnesses who are located in the Miami exempt zone use the applicant's service therein and find it satisfactory. All of the supporting witnesses need the expedited, notice service between points in Dade, Broward and Palm Beach counties to enable them to meet deadlines imposed by others such as newspapers, courts, clients, competition; or, in the case of the two hospitals, to carry specimens to laboratories where time is critical to the success of the testing; or to carry blood and supplies needed for emergency treatment of patients where preservation of

human life is concerned. These witnesses are now using company personnel for this transportation outside the Miami exempt zone which is not satisfactory.

Some of the witnesses tried various times to obtain expedited, no-notice, exclusive use of vehicle type transportation from one or more of the protestants, however, calls were not returned (Tr 345); the service was too slow (Tr 426, 434, 440, 1177); pickup requested Friday could not be made until Monday with Tuesday delivery (Tr 470-479, 564, 566, 780, 786); the service was not available (Tr 805-811); or carriers failed to make a requested pickup (Tr 1080).

It is concluded from the foregoing that the witnesses have made substantial and bona fide efforts to satisfy their requirements for expedited short notice transportation from the existing carriers without success. Although the protestants have proper tariff provisions to provide some of the service, they have not, or do not, hold out to provide the transportation proposed herein.

American Courier has authority to transport all commodities requested except those enumerated in item three below. It holds out transportation between any two points on established patterns or via exclusive use of the vehicle. No evidence was presented as to transit times or revenue involved except an estimate that the exclusive use of vehicle revenue only amounts to one or two percent of total receipts, so granting this application will have minimal adverse affect on American Courier.

Purolator's witness had no records or documentation of service provided by it in Dade, Broward, and Palm Beach counties. The witness had no knowledge of what use was being made of vehicles in exclusive use, nor did he know how many trips in exclusive use were made.

Moreover, Purolator admitted that under its existing tariff, it could only provide exclusive use of vehicle with regard to business papers, interoffice correspondence and data processing material (Tr 1394-5). None of the witnesses had ever been solicited by Purolator for expedited, exclusive use of vehicle service.

It is not sufficient for a carrier to simply have authority to perform an act in order to satisfy the requirements of §323.03(3) (c), F. S. It is also necessary for the carrier to carry on an active program of solicitation in order to acquaint the public with its ability to provide the service. Part of this obligation is to advertise such as Purolator has done in the yellow pages of the telephone book. In this case, it is obvious that such advertisement was not enough. The fact that none of the witnesses had been solicited for the type of service proposed by Archer, coupled with the witnesses' clearly

stated needs for this type of service leads us to conclude that Purolator has not provided such service as we have the obligation to require on behalf of the public.

Harper has operated for many years, however, it adopted its tariff, initiated its messenger service and limited its evidence as to company operations and level of service to the period subsequent to November, 1972, when the present owner assumed control. As he stated at the hearing all his testimony and the documentation he provided relates to that period beginning in November, 1972. The application in this docket was filed in September, 1972. Archer must show that public convenience and necessity require the grant of authority as of that time. Harper's witness could, by his own statement, provide no information as to that point. This can be considered in determining the effect grant of the application will have on existing transportation facilities and service, Southern Armored Service v. Mason, 167 So. 2d 848. Under these circumstances it is also appropriate to consider two bona fide requests made to Harper for service during the course of the hearing which were unsuccessful (Tr 470-479, 811). Of Harper's revenue for the period December, 1972, through February, 1973, about 64% was from a regular pickup, accumulation of shipments and delivery of optical and dental supplies. The remaining 36% received from all other sources includes "special calls" which could be the only ones subject to diversion by grant of this application. Thus, it is apparent that grant of Archer's application will have minimal adverse effect on Harper.

The evidence herein clearly shows that there is a transportation need the protestants are not meeting, operating as they do, on a next day delivery or aggregation of shipments basis. This commission has repeatedly taken official notice of the fact that the "Gold Coast" area of Florida — Dade, Broward and Palm Beach counties — is now and has been experiencing a large population increase. Specifically, the population for the three county area increased more than 31% between 1950 and 1970. Even more spectacular is the 48.6% increase in population for Dade and Broward counties during the same period.

From the foregoing, the commission concludes that public convenience and necessity requires the grant of Archer's petition for reconsideration and thereby the grant of the amended application; and that grant of that authority will not adversely affect the transportation facilities and transportation as a whole in the territory involved.

It is therefore ordered that the petition for reconsideration of Order No. 12091 filed herein by Archer Messenger Service, Inc. be granted.

It is further ordered that the application of Archer Messenger Service, Inc. for a common motor carrier certificate of public convenience and necessity be granted and that certificate of public convenience and necessity No. 1219 be issued so as to authorize the transportation between all points and places in Dade, Broward and Palm Beach counties of the following commodities on irregular routes and schedules —

1. Advertising material, proofs, cuts, mats, engravings, and related printed material and paper documents related thereto; press and news releases to the media;

2. Accounting data from or to stock brokerage houses, attorneys, accountants or real estate developers;

3. Samples of manufactured products moving to or from retail outlets;

4. Exposed or processed film and prints and electronic tapes and records;

5. Whole human blood, pacemakers, and machines to be inserted into human body, blood derivatives, laboratory samples, specimens, parts of human anatomy, tissue samples, serum specimens, medication and documents and records related thereto and hospital supplies and material, restricted against use of temperature controlled vehicles and use of dry ice for temperature control;

6. Data tapes, key punch cards, microfilm, business papers, records, and documents; restricted against armored car service, including cash letters and movements from and to banks, banking institutions, including computer centers on the premises of banks, as well as computer centers serving banks or owned by a bank;

7. Print-cuts, critical replacement parts and machines used in connection with data processing, and lighting supplies;

8. Blueprints, building plans, designs, building models, engineering tracings, prints, material or supplies, flowers, and floral arrangements;

with all shipments restricted to the shipper having exclusive use of the vehicle from point of origin to point of destination and all shipments delivered within four hours of the time of pickup.

It is further ordered that the above authority be held in abeyance pending the applicant complying with this commission's rules pertaining to common motor carriers of freight within 60 days of the commission order, otherwse, the above grant of authority to be null and void.